| | | |
|---|---|---|
| **L.H. and C.H.,** *as legal guardians of their minor child, A.H.,* **and L.H. and C.H.,** | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:13-0788** |
| | : | |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **PITTSTON AREA SCHOOL DISTRICT, SUPERINTENDENT MICHAEL GARZELLA,** *Individually,* **and KELLI DIAZ** *a/k/a* **KELLI PAVALONIS**[1]**,** *Individually and Officially,* | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## MEMORANDUM

"Shut up." "It's day 13 and I can't stand you already." "I'm not the only teacher who can't stand you.""You're going to have the [worst] year ever." Do you have "a problem" or "Tourette's[2]?"

These are words one would not expect a school teacher to speak to a student, let alone in front of a classroom of his peers. They are unprofessional

---

[1]"Pavalonis" is the defendant's current married name. Throughout both parties' materials, they continue to use "Diaz," the defendant's maiden name at the time of the incident. For the sake of clarity and continuity, the court will also use Diaz in this memorandum and the accompanying order.

[2]Tourette's Syndrome is a neurological disorder marked by repetitive motor and verbal tics. Affected persons may blink, jerk, grunt, clear their throats, swing their arms, grasp or clasp others, have obsessive-compulsive behaviors, or use verbal expletives uncontrollably. Taber's Cyclopedic Medical Dictionary at 2119 (19th ed. 2001).

and unacceptable to say the least. There is no real dispute in this case that a teacher in the Pittston Area School District said these words to an eighth grade student in front of his classmates. The incident was recorded on the student's cell phone. The question which the court is now called upon to determine is whether the school teacher's or the School District's conduct in relation to this incident violated the student's federal constitutional or state law rights.

Pending before the court are a motion for summary judgment brought on behalf of defendants Pittston Area School District and Michael Garzella, ("School District defendants"), (Doc. 71), and a motion for summary judgment brought on behalf of defendant Kelli Diaz a/k/a Kelli Pavalonis, ("defendant Diaz"), (Doc. 72). Based upon the court's review of the record presented in this case, the School District's motion for summary judgment will be granted, and defendant Diaz's motion for summary judgment will be granted.

I.    **PROCEDURAL HISTORY**

By way of relevant procedural background, the plaintiffs initiated the instant action by filing a complaint on March 26, 2013. (Doc. 1). The next day, the plaintiffs filed an amended complaint. (Doc. 3). Following the filing of a motion to dismiss the plaintiffs' amended complaint by the School District defendants, (Doc. 8), the plaintiffs filed a motion for leave to file a second amended complaint, (Doc. 37), and later to file a "corrected" second amended complaint, (Doc. 40). Although unusual for plaintiffs' to require so many attempt to produce

2

even a minimally adequate complaint, by order dated March 24, 2014, the court allowed the plaintiffs to file what was to be titled a "third amended complaint." (Doc. 42).[3] The plaintiffs, in fact, filed their third amended complaint on March 28, 2014. (Doc. 44). In turn, the School District defendants and defendant Diaz filed motions to dismiss the plaintiffs' third amended complaint, (Doc. 47, Doc. 61, respectively). Prior to the court considering the defendants' motions to dismiss the plaintiffs' third amended complaint, the School District defendants and defendant Diaz filed motions for summary judgment. (Doc. 71, Doc. 72, respectively). As a result, the defendants' motions to dismiss were deemed moot. (Doc. 83).

With respect to the pending motions for summary judgment, the School District defendants filed their motion on October 15, 2014. (Doc. 71). On October 29, 2014, a statement of material facts accompanied by exhibits, (Doc. 76), and a brief, (Doc. 77), were filed in support of the motion. A brief in opposition to the School District defendants' motion was filed by the plaintiffs on November 12, 2014, (Doc. 84), along with an answer to the statement of material facts, (Doc. 85). A reply brief was filed on November 26, 2014. (Doc. 88).

Defendant Diaz's motion for summary judgment was also filed on October 15, 2014, (Doc. 72), along with a supporting brief, (Doc. 73), and statement of

---

[3]The court noted that neither the plaintiffs' proposed second amended complaint, nor the "corrected" second amended complaint would be accepted. Instead, the plaintiffs were directed to file a "third amended complaint."

material facts, (Doc. 74). The plaintiffs filed a brief in opposition to defendant Diaz's motion for summary judgment, (Doc. 78), and a responsive statement of material facts, (Doc. 79), on November 5, 2014.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.  DISCUSSION

In their third amended complaint, the plaintiffs allege that, in or around September 2012, defendant Diaz, a Pittston Area School District teacher, verbally abused plaintiff A.H., a minor child, in front of other students by saying

5

the following to him:

- • "Shut up."

- • "It's day 13 and I can't stand you already."

- • "You're going to have the worse (sic) year ever."

- • "I'm not the only teacher who can't stand you."

The plaintiffs further allege that defendant Diaz asked plaintiff A.H. if he had "a problem" and whether he had "Tourette's." Prior to defendant Diaz making these comments, the plaintiffs claim that the School District defendants knew or should have known that defendant Diaz had another run-in with a minor student in which she acted inappropriately and that she had prior legal issues.

Plaintiffs L.H. and C.H. allege that they informed the School District defendants about the comments made by defendant Diaz to A.H. after learning of them in or around October 2012. Instead of remedying the situation and terminating defendant Diaz, the plaintiffs allege that the School District defendants retaliated against them by protecting defendant Diaz and forcing A.H. to be home schooled for more than five months, refusing to respond to inquiries about the status of the investigation into defendant Diaz's behavior, and failing to disclose what discipline, if any, was imposed upon defendant Diaz. Based upon these allegations, in Count I of the third amended complaint, the plaintiffs set forth a claim of First Amendment retaliation against the School District defendants.

As alluded to above, the plaintiffs allege in Count II that defendant Diaz

6

had legal troubles, in that she had previously entered a plea of guilty to a charge of disorderly conduct. The plaintiffs allege that the School District defendants knew or should have known about defendant Diaz's prior legal troubles and had a duty to check her background and references. In fact, the plaintiffs allege that the defendants should never have hired Ms. Diaz in the first place because she lied on her employment application that she had never been convicted of a crime as defined within the application material.

Moreover, after defendant Diaz was hired, the plaintiffs allege that another student had alerted the School District defendants at a School Board meeting of other misconduct engaged in by defendant Diaz. According to the plaintiffs, this matter was never investigated.

The plaintiffs allege that the School District defendants failed to take steps to guard against the misconduct which occurred in this case. Specifically, they allege that the School District defendants hired defendant Diaz knowing of her troubled background, never monitored her, and failed to properly train her. In Count II of the plaintiffs' third amended complaint, they allege inadequate supervision, hiring, screening, and training under 42 U.S.C. §1983 against the School District defendants.

As a result of all of the defendants' conduct outlined above, the plaintiffs allege that A.H. suffered severe emotional distress. On this basis, Count III of the plaintiff's third amended complaint claims intentional infliction of emotional distress on behalf of A.H. against all defendants.

7

In Count IV, the plaintiffs allege a violation of A.H.'s due process rights pursuant to 42 U.S.C. §1983. Here, the plaintiffs allege that defendant Diaz inflicted "cruel and unusual" treatment onto a minor child in a public classroom in front of fellow students and that the School District defendants were "deliberately indifferent" to the verbal assault since they failed to properly train defendant Diaz on how to conduct herself with minor children.

Finally, in Count V of the third amended complaint, the plaintiffs allege a state law claim against the School District defendants for negligent supervision, hiring and training, the factual basis of which runs parallel to the §1983 claim set forth in Count II.

On the basis of the claims set forth above, the plaintiffs are seeking various forms of relief, including allowing A.H. to return to school without defendant Diaz in his presence or supervision, public disclosure of the "settlement agreement" entered into between the School District defendants and defendant Diaz, punitive damages against defendant Diaz only, attorney's fees and costs, pre- and post-interest, delay damages and damages for emotional distress.

In an attempt to counter the allegations set forth in the plaintiffs' complaint and to demonstrate that there are no genuine issues of fact for trial, the School District defendants and defendant Diaz have each submitted their own motion for summary judgment.

### A. Defendant Diaz's Motion for Summary Judgment

As set forth above, there are two claims made against defendant Diaz in the plaintiffs' third amended complaint. Initially, in Count III, the plaintiffs allege a state law claim of intentional infliction of emotional distress, ("IIED"). In Count IV, the plaintiffs allege a violation of A.H.'s due process rights. Defendant Diaz argues that she is entitled to summary judgment on both claims. Moreover, she argues that the plaintiffs have not established their entitlement to punitive damages.

In support of her motion for summary judgment, defendant Diaz has provided a statement of material facts which establishes that, at the time of the incident at issue, plaintiff A.H. was an eighth grade student at the Pittston Area Middle School. Defendant Diaz was employed as a social studies teacher at the Pittston Area Middle School at the relevant time.[4] At the time of the incident at issue, defendant Diaz was covering another teacher's class.[5] The class was a

---

[4]Plaintiffs deny this claim only on the basis that the statement is not supported by the cited deposition testimony. Although defendant Diaz incorrectly referenced page 8, as opposed to page 9, the statement is, in fact, supported by her deposition testimony. (Doc. 78, Diaz Depo., p. 9).

[5]In response to a number of defendant Diaz's statements of fact, relying on Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000) and Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005), plaintiffs' counsel argues that the court should not consider any of the testimony of defendant Diaz, even if uncontradicted, because she is a defendant in this matter and is therefore an
(continued...)

computer class. However, there was no computer lesson left for the students. As such, defendant Diaz allowed the students in this class, which included plaintiff A.H., to go to their lockers to bring any work that they wanted to work on back to her social studies classroom.

Defendant Diaz testified that the incident at issue occurred after the students were "constantly yelling out, screaming out" and she "had tried to quiet them down three separate occasions." Defendant Diaz testified that when there

---

[5](...continued)
interested witness. Counsel makes the same argument with respect to the testimony of defendant Garzella.

In Reeves, the Court stated that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." 530 U.S. at 151 (internal citation and quotation marks omitted).

If counsel's interpretation of Reeves were accepted, the court would never be able to consider a defendant's deposition or affidavit, or a plaintiff's for that matter, in relation to a motion for summary judgment because those individuals would always be interested parties. Counsel's argument would render discovery of a party's testimony useless for summary judgment purposes. In fact, the Third Circuit has already rejected counsel's line of argument finding that it takes Reeves too far. Lauren W. v. DeFlaminis, 480 F.3d 259, 272 (3d Cir. 2007) (noting "that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness," because to do otherwise, "contrary to all precedent, . . . would allow the non-moving party to defeat the motion with mere allegations."). As such, to the extent that counsel relies upon this argument for her denials, those denials will be deemed admissions.

10

is a disruption in the classroom with a student because they are talking too much or they are with their friends too much she will try moving the student's seat.[6] On this occasion, defendant Diaz asked plaintiff A.H. to come up to the front of the room to sit by her.[7] Shortly thereafter, the incident at issue took place and plaintiff A.H. recorded defendant Diaz's conduct on his iPod. Plaintiff A.H. recorded only the verbal incident at issue. Plaintiff A.H. testified that he did not react or otherwise say anything to defendant Diaz after the incident and remained in the classroom until the end of class.

In her deposition, defendant Diaz acknowledged seeing the statements she was alleged to have made and, while not recollecting the exact wording used, accepted that it was possible that she used the statements as alleged. She further acknowledged that her conduct was inappropriate.

---

[6]Plaintiffs' counsel denies this statement stating that "[m]isbehaving students should be brought to the principal's office." However, counsel's denial is on the basis of testimony given by defendant Garzella responsive to a question by counsel ". . . if you did have an issue with a child, a minor child, do you verbally assault them or do you take them to the principal and have the principal deal with the student?" (Doc. 76, Garzella Depo., p. 46). Defendant Garzella responded that "before any teacher reacts in that fashion" the student should be brought to the principal. (Id., p. 47). Defendant Garzella's testimony in no way contradicts defendant Diaz's statement that she has a practice of moving a student's seat when they are talking too much or otherwise indicates that her practice is inappropriate.

[7]Plaintiffs' counsel denies this statement citing to the deposition testimony of A.H., who indicated that the room was chaotic and that everyone was talking. This does not, however, contradict defendant Diaz's testimony that she asked plaintiff A.H. to sit by her.

With the above facts in mind, the plaintiffs allege in Count III of the third amended complaint that, as a result of the verbal assault upon A.H. by defendant Diaz, A.H. suffered severe emotional distress culminating in panic attacks. Even accepting the plaintiffs' allegations as true, defendant Diaz argues that the allegations do not rise to the level necessary to sustain an IIED claim. This court agrees.

In Pennsylvania, in order to establish a claim for IIED, there are four elements that must be met: (1) extreme and outrageous conduct, (2) which is intentional or reckless; (3) it must cause emotional distress, and (4) that distress must be severe. See Hoy v. Angelone, 691 A.2d 476, 482 (Pa.Super. 1997). To establish a claim for IIED, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa.Super. 1987)). For liability to be imposed against an individual on an IIED claim, there must be "knowledge on part of the [individual] that severe emotional distress is substantially certain to be produced by his conduct." Hoffman v. Memorial Osteopathic Hosp., 492 A.2d 1382, 1386 (Pa.Super. 1985) (quoting Forster v. Manchester, 189 A.2d 147, 151 (Pa. 1963) (emphasis in original)). This high burden is difficult to satisfy under Pennsylvania law. See Hoy, 720 A.2d at 753-54. The Pennsylvania Superior Court has held that for conduct to rise to the level of outrageousness necessary for an IIED

12

claim it must be such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'." Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa.Super. 1997) (internal quotations removed).

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have . . . presented only the most egregious conduct See[,] e.g., Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); Banyas v. Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

K.A. ex rel. J.A. v. Abington Heights Sch. Dist., 28 F.Supp.3d 356, 376 (M.D. Pa. 2014) (citing Hoy v. Angelone, 720 A.2d at 754). The standard for IIED is generally not satisfied by allegations of "insults, indignities, threats," or other similar conduct. Price ex rel. O.P. v. Scranton Sch. Dist., 2012 WL 37090, at *12 (M.D. Pa. Jan. 6, 2012) (citing Reimer v. Tien, 514 A.2d 566, 569 (Pa.Super.Ct. 1986)). It is for this court to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute "outrageousness" as a matter of law. See Smith v. Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 427-28 (E.D. Pa. 2000) (citing Kuzel v. Krause, 658 A.2d 856, 860 (Pa.Commw. 1995); Corbett v. Morgenstern, 934 F.Supp. 680, 684 (E.D.Pa.

1996)).

In this case, while defendant Diaz's conduct toward A.H. was certainly inappropriate given their respective positions, in light of the high standard set by the state courts to establish a claim for IIED, including finding that verbal insults, indignities, threats, or other similar conduct do not satisfy the standard for IIED, the plaintiffs have failed to demonstrate that defendant Diaz's conduct was so extreme or outrageous as to rise to the level necessary to satisfy a claim of IIED. Therefore, defendant Diaz is entitled to summary judgment as to this claim.

In Count IV of the third amended complaint, which is labeled a due process claim, the plaintiffs allege that defendant Diaz "inflicted cruel and unusual treatment onto [A.H.] in a public school classroom" when she "verbally abused" A.H. in the manner set forth above. The plaintiffs allege that such was "cruel and unusual treatment and in violation of [A.H.'s] liberty interest."[8] Even accepting the plaintiffs' allegations as true, defendant Diaz argues that she is entitled to summary judgment as a matter of law.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. §1983. "To establish liability under 42 U.S.C. §1983, a

---

[8]The plaintiffs do not identify the liberty interest at stake in their third amended complaint.

plaintiff must show that defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005) (citations omitted).

The plaintiffs' due process claim falls under the Fourteenth Amendment, which provides, in relevant part, that a state shall not "deprive any person of life, liberty, or property, without due process of law; . . ." U.S. Const. amend. XIV, §1. While due process under the Fourteenth Amendment contains both a procedural and substantive component, only the substantive component is at issue here.

The Due Process Clause protects an individual's liberty interest in personal bodily integrity. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citations omitted). While not alleged in the third amended complaint, the plaintiffs argue in their materials opposing the defendants' motions for summary judgment that the interest at stake was A.H.'s liberty interest "of not being defamed, humiliated and made fun of in front of his minor peers."

The Third Circuit has stated:

> To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience . . . Deprivation violates due process only when it shocks the conscience, which encompasses only the most egregious official conduct . . . while the meaning of the [shocks the conscience] standard varies depending upon factual context, merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision.

Chainey v. Street, 523 F.3d 200, 219-20 (3d Cir. 2008) (internal citations and

quotations omitted).

The Third Circuit has developed a four-part test for analyzing claims of physical abuse against a school official. See Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 172 (3d Cir. 2001). The instant action involves only a claim of verbal abuse, not physical abuse. However, as with claims of physical abuse, claims involving "[n]on-physical types of harassment, including verbal abuse, require the same 'shocks the conscience' analysis." S.M. v. Lakeland Sch. Dist., 148 F.Supp.2d 542, 547 (M.D.Pa. 2001), *aff'd*, 33 Fed.Appx. 635 (3d Cir. 2002). Typically, courts considering claims of verbal abuse by state actors have found that such conduct alone was not severe enough to rise to the level of a substantive due process violation. Id. See Abeyta v. Chama Valley Independent Sch. Dist., 77 F.3d 1253 (10th Cir. 1996) (whether done with indifference or deliberate intent to cause psychological harm, claim that teacher called sixth grade student a prostitute in front of her class for over a month-and-a-half did not rise to the level of a substantive due process claim); Doe v. Gooden, 214 F.3d 952 (8th Cir. 2000) (plaintiffs failed to state a substantive due process claim against elementary school teacher accused of "yelling and screaming at students, using foul language, telling students that their handwriting 'sucks,' telling students that 'if they had one eye and half a brain, you could do this,' calling students 'stupid,' and referring to students as 'bimbos,' 'fatso,' and the 'welfare bunch.'"); Costello v. Mitchell Public Sch. Dist., 266 F.3d 916 (8th Cir. 2001) (finding no substantive due process claim where a teacher

16

called a student "retarded, stupid, and dumb" in front of her classmates). See also, Wyatt v. Fletcher, 718 F.3d 496 (5th Cir. 2013) (finding that verbal abuse does not give rise to a constitutional violation under §1983).

While the behavior exhibited by defendant Diaz was highly inappropriate and unprofessional, given the standard set forth above, even accepting the plaintiffs' allegations as true, the actions of the defendant Diaz do not rise to the 'conscience-shocking' level necessary to support a substantive due process claim. As such, defendant Diaz's motion for summary judgment will also be granted with respect to the plaintiffs' substantive due process claim.[9]

## B.    School District Defendants' Motion for Summary Judgment

In their motion for summary judgment[10], the School District defendants

---

[9]Since the court has determined that defendant Diaz is entitled to summary judgment on both counts of the plaintiffs' complaint in which she is named, it is unnecessary for the court to address defendant Diaz's argument regarding punitive damages.

[10]Plaintiffs' counsel argues that the court should deny the School District defendants' motion for summary judgment outright because, contrary to L.R. 56.1, these defendants did not file their statement of facts contemporaneously with their motion for summary judgment. Local Rule 56.1 provides that a motion for summary judgment "shall be accompanied by" a separate, short and concise statement of the material facts. While the School District defendants did not file their statement of facts with their motion for summary judgment as required by L.R. 56.1, they did provide their statement of facts along with their supporting brief shortly thereafter. There is no indication that the plaintiffs were prejudiced by the defendants' belated filing of their
(continued...)

17

initially argue that they are entitled to immunity on the plaintiffs' state law claims pursuant to the Political Subdivision Tort Claims Act, ("PSTCA"), 42 Pa.C.S.A. §§8541, et seq., (i.e., Count III - Intentional Infliction of Emotional Distress and Count V - Negligent Supervision, Hiring, and Training). (Doc. 77, pp. 4-6).

With respect to the Pittston Area School District, pursuant to the PSTCA, a local agency cannot be held "liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. §8541. Immunity under the PSTCA is waived "to the extent the agency would otherwise be liable for a narrow subset of negligent acts by its agents or employees."[11] However, none of these exceptions apply in this case. As such, the Pittston Area School District is entitled to immunity under the PSTCA with respect to the plaintiffs' state law claims. Summary judgment will be entered in favor of the Pittston Area School District on Counts III and V of the plaintiffs' third amended complaint.

With respect to defendant Garzella, "[m]unicipal employees, including

_____

[10](...continued)
statement of facts. Moreover, the court is inclined to afford the School District defendants the same leeway with respect to their filings as the court has afforded to the plaintiffs' counsel, who is now on her third amended complaint.

[11]These acts include liability arising from (1) the operation of motor vehicles, (2) the care, custody or control of personal property, (3) the care, custody or control of real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) the care, custody or control of animals. 42 Pa.C.S.A. §8542(b).

school district employees, are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment. 42 Pa.C.S.A. §8545. However, there is an exception to this general rule: Employees are not immune from liability under §8545 where their conduct amounts to 'actual malice' or willful misconduct.'" Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006). Willful misconduct has been recognized by the Pennsylvania Supreme Court to require a demanding level of fault. Id. In fact, willful misconduct has been defined as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (1994).

The plaintiffs' claim of negligence in Count V of the third amended complaint does not meet the exception to the general rule of immunity for school district employees. Therefore, defendant Garzella is entitled to summary judgment on Count V of the plaintiffs' complaint. The plaintiffs' claim for intentional infliction of emotional distress in Count III, however, by its very nature, is a claim of willful misconduct. Therefore, defendant Garzella is not entitled to immunity as to this claim pursuant to the PSTCA and is not entitled to summary judgment on Count III of the plaintiffs' third amended complaint on this basis.

Defendant Garzella is, however, entitled to summary judgment as to the merits of the plaintiffs' claim for IIED. The plaintiffs allege that A.H. suffered severe emotional distress as a result of defendant Diaz's verbal abuse, which the

School District defendants allowed to occur by way of their inaction both before and after the incident. The standard necessary to establish an IIED claim has been set forth above. As applies to the School District defendants, in addition to the above, courts have found that allegations of a failure to act do not generally establish a claim for IIED. See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 43 F.Supp.3d 412, 431 (M.D. Pa. 2014) (citing Jackson v. Sun Oil Co., 361 Pa.Super. 54, 521 A.2d 469, 471 (1987) (there is no liability for intentional infliction of emotional distress where the claim is based on the failure to act)). See also Page ex rel. Page v. School District of Philadelphia, 45 F.Supp.2d 457, 469 (E.D.Pa. 1999) (school teachers' failure to act to prevent assault of student did not subject them to liability for intentional infliction of emotional distress).

In this case, the plaintiffs' IIED allegations against the School District defendants center around their failure to act both before and after the incident at hand. As indicated, however, claims of a failure to act are generally insufficient to rise to the level necessary for IIED. Moreover, as to defendant Garzella, the record reflects that he was only on the job as Superintendent of the Pittston Area School District for a very short time, approximately two weeks, prior to the incident at issue in 2012, (Doc. 76, Ex. D, pp. 9, 23, 35, 83-84).[12] Defendant Diaz was hired by the School District in 2007. (Doc. 84, Diaz Depo., p. 14). It naturally follows from these facts that defendant Garzella would have had nothing to do with defendant Diaz's hiring back in 2007, or her monitoring or training up until

---

[12]See n.5.

the time he took over as Superintendent in 2012, just prior to the incident at issue, and there is nothing in the record to indicate otherwise.

As for defendant Garzella's handling of the incident at issue, the record reflects that when A.H.'s parents met with defendant Garzella, among others, to discuss the incident, defendant Garzella indicated that defendant Diaz's behavior was "appalling," that "they [would] not tolerate this kind of behavior from a teacher to their students," and that they would "take care of it." (Doc. 76, Ex. B, Depo. of L.H., pp. 24-25; Ex. C, Depo. of C.H., pp. 23-24)[13].

According to the record, however, defendant Garzella did not have the power to unilaterally terminate an employee; instead, he could only make a recommendation to the Board of Directors, which maintained the authority to hire and fire individuals. (Doc. 76, Ex. D, p. 55)[14]. Further, in disciplining an employee, defendant Garzella and the Board of Directors were obliged to follow the requirements of the Pennsylvania School Code and the Collective Bargaining

---

[13]Although the plaintiffs deny that the meeting was arranged to discuss A.H.'s "disciplinary issues, if any," the deposition testimony of L.H. and C.H. regarding the response of defendant Garzella is not denied and speaks for itself.

[14]The plaintiffs argue that defendant Garzella could have fired defendant Diaz himself if he deemed her conduct was cruelty or intemperance under the School Code. However, his testimony is clear that he did not have the unilateral authority to hire or fire any individual under any circumstances. Instead, he could only make a recommendation to the Board of Directors.

Agreement[15]. (Doc. 76, Ex. D, p. 12). While the Collective Bargaining Agreement called for multi-step progressive discipline, (Doc. 76, Ex. D, pp. 21, 73), the Pennsylvania School Code allowed an individual to be terminated without progressive discipline where it was established that they engaged in an act of "intemperance" or "cruelty", (Doc. 76, Ex. D, p. 18).

Although defendant Diaz's conduct was clearly inappropriate, it was the consensus of the Board and defendant Garzella that it was questionable as to whether her conduct rose to the level of severity necessary to terminate her without progressive discipline. (Doc. 76, Ex. D, p. 74). As such, they determined that an investigator should be hired to ascertain whether the School Code had been violated[16]. The investigator hired was Attorney Mark Walsh, who was recommended by the School Board's solicitor. (Doc. 76, Ex. D, pp. 12). Ultimately, Attorney Walsh prepared a report, which concluded that defendant

---

[15]The plaintiffs deny this statement, in part, citing to the testimony of defendant Garzella that he disagreed with the Collective Bargaining Agreement. Regardless of whether he agreed or disagreed with the Collective Bargaining Agreement, however, there is no real dispute that defendant Garzella was obligated to comply with its terms.

[16]Plaintiffs' counsel denies this statement on several bases. First, she indicates that Mr. Walsh is now deceased. Further, she references defendant Garzella's testimony that Mr. Walsh was referred by the School Board's solicitor. Finally, she states that "Attorney Walsh's assessment is just one man's opinion." These factors do nothing to controvert the defendants' statement that the Board of Directors, in conjunction with defendant Garzella, ultimately decided that they would employ Mr. Walsh to conduct an investigation into defendant Diaz's conduct.

22

Diaz's conduct was not a violation of the School Code[17]/[18]. (Doc. 76, Ex. D, pp.

---

[17]While the court has not been provided a copy of Attorney Walsh's report, it appears from the depositions taken in this case that plaintiffs' counsel is in possession of a copy of the report. Plaintiffs' counsel has not raised any substantive challenge to the court regarding the report but, as discussed below, only to the report's admissibility.

[18]In response to this statement, plaintiffs' counsel simply provides "Denied. Hearsay and violation of the Dead Man's statute." Initially, counsel's bare denial is insufficient to put any substantive argument with respect to Attorney Walsh's report before the court. Despite this, it is not apparent that Attorney Walsh's report falls under the definition of hearsay provided in Fed.R.Evid. 801(c)(2). To this extent, there is no indication that the District is offering Attorney Walsh's report to prove that defendant Diaz did not, in fact, violate the School Code, but the report is being offered to show the reasonableness of their actions based upon the information they received. Whether Attorney Walsh's conclusion was correct or not is of no consequence to whether the actions that the School District defendants took in response to that information bring them within the realm of culpability necessary for the plaintiffs to support their claims.

Moreover, as to counsel's reliance on the Pennsylvania Dead Man's Act, 42 Pa.Cons. Stat. §5930, the Act applies only in federal cases where state substantive law controls, but does not apply to any claim under federal law. See Savarese v. Agriss, 883 F.2d 1194, 1200 n.10 (3d Cir. 1989). On this basis, the Act would not apply to the §1983 claims raised in Counts I, II, and IV of the plaintiff's third amended complaint.

As to the state law claims, the Dead Man's Act is construed narrowly and applies only when three criteria are met: (1) the deceased must have had an actual right or interest in the matter at issue, i.e. an interest in the immediate result of the suit; (2) the interest of the witness-not simply the testimony-must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest. Kovach v. General Telephone Co. of Pa., 489 A.2d 883, 886 (Pa.Super.1985). These criteria have clearly not been satisfied in this case. As such, the Dead Man's Act is inapplicable in this case and does not bar the consideration of Attorney
(continued...)

23

13).

Based upon the information provided in Attorney Walsh's report, the Board and defendant Garzella decided that it was necessary to follow the steps for progressive discipline set forth in the Collective Bargaining Agreement. (Doc. 76, Ex. D, pp. 12-13). The first step of the progressive disciplinary system required that defendant Diaz's immediate supervisor, the school principal, issue her a verbal warning. (Id.). This, in fact, took place and was memorialized in writing, with defendant Diaz signing a document acknowledging her conduct, the fact that it was unacceptable and that it should not be repeated. (Doc. 76, Ex. D, pp. 12, 21-22; Ex. D, Attachment). In addition to the verbal warning, defendant Diaz was required to complete a related course over the summer prior to returning to work. (Doc. 76, Ex. D, p. 13). Were defendant Diaz to be involved in any further incidents which did not rise to the level of severity required by the School Code, the process would have proceeded to the next level of the progressive disciplinary system. Defendant Garzella testified, however, that there were no reports of defendant Diaz being involved in any further incidents. (Doc. 76, Ex. D, pp. 52).

Considering the above facts of record, it cannot be said that defendant Garzella's handling of the situation was so extreme or outrageous so as to rise to the level necessary to sustain the plaintiffs' IIED claim against him. Defendant

[18](...continued)
Walsh's report.

Garzella was made aware of the incident and indicated that it would be handled. When he received information that defendant Diaz's conduct did not rise to the severity necessary for termination without progressive discipline, the Board and defendant Garzella followed the progressive disciplinary system under the Collective Bargaining Agreement as they were required to do. Defendant Diaz was, in fact, disciplined under the first step of the progressive disciplinary system. In addition, defendant Diaz was required to attend related classes. It cannot be said that defendant Garzella's actions in handling the situation were so extreme or outrageous as to satisfy the requirements of an IIED claim. As such, defendant Garzella is entitled to summary judgment with respect to the plaintiffs' IIED in Count III of the plaintiffs' third amended complaint.

The School District defendants further argue that they are entitled to summary judgment on the plaintiffs' First Amendment retaliation claim in Count I of the third amended complaint. Here, the plaintiffs allege that, after learning of the incident involving defendant Diaz and their son, they disclosed to the School District defendants the official misconduct of defendant Diaz. The plaintiffs allege that defendant Diaz's official misconduct is a matter of public concern since local media picked up the story. Instead of removing defendant Diaz, the plaintiffs allege that the School District defendants retaliated against them by protecting defendant Diaz, which forced A.H. to be home schooled, refusing to respond to inquiries about the status of the alleged investigation into defendant Diaz's conduct, and failing to disclose what discipline, if any, was given to defendant

Diaz.

To prevail on a First Amendment retaliation claim, the plaintiffs must prove: "(1) that [they] engaged in a constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010) (citing Eichenlaub v. Twp. of Ind., 385 F.3d 274 (3d Cir. 2004)). The conduct of the governmental agent or body must be sufficient "to deter a person of ordinary firmness from exercising [their] First Amendment rights." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (citing Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000)). The "effect of alleged retaliation on protected activities need not be great in order to be actionable, but must be more than *de minimus*." Kougher v. Burd, 274 Fed. App'x 197, 200 (3d Cir. 2008) (citing McKee, 436 F.3d 165, and expanding this principle beyond the employment context to actions by governmental actors on private citizens).

The first prong of a retaliation claim is a question of law for the court to determine. Although the second and third prongs generally "present questions of fact for the jury, only genuine questions of fact should be determined by the jury." Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005). Accordingly, summary judgment is available in cases where there exists no material fact as to whether the retaliatory action is sufficient to deter a person of ordinary firmness from exercising his constitutional rights and whether there exists a causal link between the constitutionally protected conduct and the retaliatory action. Id. See

Robinson v. Hicks, 2011 WL 398035 (M.D. Pa. Feb. 1, 2011) *aff'd*, 450 F. App'x 168 (3d Cir. 2011).

As is the case with an IIED claim, generally, a failure to act on a complaint is not a retaliatory or adverse action sufficient to sustain a First Amendment retaliation claim. Monn v. Gettysburg Area Sch. Dist., 2013 WL 1345501, at *4-5 (M.D. Pa. Apr. 2, 2013) *aff'd*, 553 F. App'x 120 (3d Cir. 2014) *cert. denied*, 135 S. Ct. 438, 190 L. Ed. 2d 329 (2014) (citations omitted). A failure to act on a complaint is generally not a retaliatory action because, in the typical retaliation claim, the plaintiff is complaining about "an affirmative detriment following the exercise of protected activity." Id. (citing Finley v. County of Martin, 2009 WL 5062326, at *15 (N.D.Cal. Dec. 23, 2009) (failure to conduct an adequate investigation of discrimination claim was not sufficient adverse action to sustain a retaliation claim). Here, the plaintiffs' allegations that the School District defendants failed to remove defendant Diaz after their complaints and failed to return their calls or inform them of the status of the investigation regarding defendant Diaz, is essentially a claim that the School District defendants failed to act. The mere failure of school officials to act on any particular complaint, however, would not deter a person of ordinary firmness from engaging in, or continuing to engage in, the First Amendment activity of presenting complaints to school officials. To this extent, the plaintiffs would not be deterred from engaging in the protected activity because there would be no cost associated with simply pursuing further complaints.

The plaintiffs have not alleged that the School District defendants took some affirmative action which deterred them from exercising their rights. They allege that the School District defendants failed to adequately act on their complaint. Given that the plaintiffs have failed to establish sufficient adverse action in order to sustain a First Amendment retaliation claim against the School District defendants, summary judgment will be entered in favor of the School District defendants on Count I of the plaintiffs' third amended complaint.

As with defendant Diaz, in Count IV of the third amended complaint, the plaintiffs have set forth a substantive due process claim against the School District defendants. With respect to the School District defendants, the plaintiffs allege that "[d]efendant Pittston Area School District was deliberately indifferent to the minor Plaintiff's verbal assault by Teacher/Defendant DIAZ since they failed to train Diaz and others like her on bullying and proper conduct with minor children." In their brief opposing the defendants' motion for summary judgment, the plaintiffs further argue that the School District defendants allowed defendant Diaz to teach knowing that she had pled guilty to disorderly conduct in the past. By allowing defendant Diaz to teach without proper supervision or training, the plaintiffs argue that the School District defendants are liable for a state-created danger.

The Third Circuit has "recognized that a state actor may be held liable under the 'state-created danger' doctrine for creating danger to an individual in certain circumstances." Henry v. City of Erie, 728 F.3d 275, 281 (3d Cir. 2013)

(citing Morrow v. Balaski, 719 F.3d 160, 176 (3d Cir. 2013)). Liability may attach under this doctrine "where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." Morrow, 719 F.3d at 177 (citing Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996)).

In order to prevail on a state-created danger theory, the plaintiffs must establish: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Id. (quoting Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)).

Here, the plaintiffs have not satisfied the fourth element above because there was no affirmative action by the School District defendants which made A.H. more vulnerable than he would have been had the defendants done nothing at all. Under the fourth element, the Third Circuit has found that liability "is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger. It is misuse of state authority, rather

than a failure to use it, that can violate the Due Process Clause." Bright, 443 F.3d at 282 (internal citations and quotation omitted). As such, in order to establish the fourth element of a state-created danger claim, the plaintiffs must identify "an affirmative action, rather than inaction or omission." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (citations omitted). While "the line between action and inaction is not always easily drawn," Morrow, 719 F.3d at 178, the Third Circuit has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." Bright, 443 F.3d at 282. The requirement of an affirmative act serves to distinguish cases where officials might have done more from cases where officials created or increased the risk itself. Morrow, 719 F.3d at 179 (alterations and citation omitted). In this case, the plaintiffs have not identified any affirmative action by the School District defendants that caused A.H. to be more vulnerable than he would have been had the School District defendants not acted at all. Rather, the plaintiffs claims that it was the School District defendants' inaction, i.e., its failure to adequately train, supervise and monitor defendant Diaz, that put A.H. at risk. Despite the plaintiffs' claims, the Third Circuit has found that "failures to act cannot form the basis of a valid §1983 [state created danger] claim." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 433 n.11 (3d Cir. 2006); see also Bright, 443 F.3d at 284 ("failure to protect an individual against private violence does not violate the Due Process Clause."); Carlin v. Marren, 2012 WL 4717899, at *1 (E.D.Pa. Oct. 3, 2012) ("In pleading her

state-created danger claim, Plaintiff points to the following conduct committed by Rescue Squad: failure to provide its members with sexual harassment training, failure to impose bunkroom policies, failure to maintain separate sleeping facilities for men and women, failure to implement adequate security measures, failure to train and supervise members and failure to restrict access to the Rescue Squad building. These allegations amount to nothing more than a series of actions not taken by Defendant. As failures to act do not render Defendant liable under the fourth element, Plaintiff fails this element and cannot proceed on a state-created danger claim."); Nawuoh v. Venice Ashby Cmty. Ctr., 802 F.Supp.2d 633, 642 (E.D.Pa. 2011) (failure to train is not an affirmative act that satisfies the fourth element); Estate of Pendelton ex rel. Pendelton v. Davis, 2007 WL 1300743, at *11 (M.D.Pa. May 3, 2007) (failures of supervision or training do not meet the affirmative act requirement of the state-created danger test). The plaintiffs have failed to establish how the School District defendants' failure to provide adequate training, supervision and monitoring of defendant Diaz "created a new danger for A.H. or rendered [him] more vulnerable to danger than had the state not acted at all." Morrow, 719 F.3d at 178. Therefore, because the School District defendants did not affirmatively use their authority in a way that created a danger to A.H. or that rendered A.H. more vulnerable to danger than had it not acted at all, the plaintiffs are unable to establish a substantive due process claim under a state-created danger theory. See Bridges ex rel. D.B. v. Scranton Sch. Dist., 66 F. Supp. 3d 570, 582-84 (M.D. Pa. 2014).

Finally, as to the §1983 inadequate supervision, hiring, screening and training claim set forth in Count II of the third amended complaint, this claim fails as a matter of law because the plaintiffs have not established that A.H. suffered an underlying violation of his constitutional rights. As discussed above, the court has found that the plaintiffs have not established either their First or Fourteenth Amendment claims. Because A.H. was not deprived of a constitutional right, the plaintiffs cannot recover from the School District defendants under §1983 on a theory that they failed to train, monitor or supervise its employees. See S.M., 148 F.Supp.2d at 552; Crawford v. Lappin, 446 Fed.Appx. 413, 416 (3d Cir. 2011) ("the absence of an underlying constitutional violation precludes any supervisory liability on a 'knowledge or acquiescence' or 'failure to train' theory"); Kneipp, 95 F.3d at 1212 n.26 (absent underlying constitutional violation, failure to train claim against a municipality cannot stand).

On the basis of the foregoing, an appropriate order shall issue.



s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 10, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-0788-01.wpd